Submitted December 31, 1962, accused reprimanded
January 16, 1963

IN RE COMPLAINT AS TO THE CONDUCT OF
# C. E. WHEELOCK
377 P. 2d 858

No appearances.

ROSSMAN, J.

Mr. C. E. Wheelock, the accused, was admitted to the Oregon State Bar in 1938 and proceeded at once with the active practice of law. In 1956 a Mrs. Jacque Williamson of Portland engaged his services to protect her interest in an estate which was under probate in Clovis, New Mexico. The estate was that of an intestate by the name of Mrs. J. D. Bailey who was Mrs. Williamson's mother. Mrs. Williamson was one of five children who survived their mother. One of the five was a son. They were the only heirs. Ill feeling, or a sense of mistrust, existed among some of the five. Mrs. Williamson was not on cordial terms with all other members of the family. The mother's death and the probate of her estate caused the ill feeling to become active.

The mother's estate consisted largely of (1) a ranch near Clovis, (2) the family home in that town, and (3) a duplex.

While the mother was living the son occupied the ranch, which was devoted largely to the raising of wheat, and continued to operate it while the estate was under administration.

Although there were five children of the deceased, Mrs. Williamson expected that upon the sale of the home the sum thus derived would be divided into three parts, not five, and that she would receive one of the three parts. The attorney for the estate felt that the maximum value of the home property was $10,000; nevertheless, Mrs. Williamson insisted that Mr. Wheelock should see to it that it brought not less than $12,000. Mrs. Williamson complained to Mr.

Wheelock that the amounts for which her brother accounted as the proceeds of the wheat crop were inadequate and wished him to obtain a larger return. She also believed that the sale of the ranch should yield a sum materially larger than that which was under discussion.

The ill will which some members of Mrs. Williamson's family manifested toward the others was known to at least some of the attorneys who practiced in the small town of Clovis. Mr. Wheelock, although he attempted to do so, was unable to induce the members of the bar in that town to whom he applied to undertake the rendition of the service which Mrs. Williamson desired. He thereupon attempted to obtain for her through his own efforts the results which she desired.

The attorney who had charge of the probate of the estate seemingly was honest and competent. Mrs. Williamson did not criticize the procedure he employed, but, as above noted, thought that the properties should produce sums substantially greater than were under consideration and that her mother's estate represented a large value. She also thought that her brother who lived upon the ranch had not reported honestly the amounts that he received from the wheat crop and that he should be required by Mr. Wheelock to account for a much larger sum of money.

According to Mr. Wheelock, Mrs. Williamson called upon him with exasperating frequency. Testimony indicates that she was in his office an excessive number of times and phoned to him with great frequency. In the meantime he told her untruthfully, as he frankly conceded to the trial committee, that he had arranged matters so that the home would sell for $12,000, that Mrs. Williamson would receive one-

third of the proceeds of the sale, and that he had engaged an auditor to determine the sums received by her brother from the wheat ranch. He also told Mrs. Williamson falsely that he had made two trips to Clovis on her behalf. All of those statements, Mr. Wheelock conceded, were untruths. Evidently the client had dominated the attorney and the latter had made statements which he thought his client wished to hear. Finally, Mr. Wheelock, in recognition of the fact that the situation had got into a highly unsatisfactory condition which he wished to terminate, told Mrs. Williamson that the home place had sold for $12,000 and gave her his check for one-third of that sum less the amounts that (1) he charged for his services as an attorney, (2) his expenses for many long distance telephone calls to Clovis that he made upon Mrs. Williamson's request, and (3) for two trips to Clovis that he told Mrs. Williamson he had made, which he had not. He then gave her the check. Mr. Wheelock had received no remuneration whatever from Mrs. Williamson and had not been paid for the expenses that he had incurred in her behalf. He did not expect to receive any of the proceeds from the sale of the home property whenever a sale was in truth made. He swore that he expected that by pretending that the home property had sold for $12,000 and by giving Mrs. Williamson a check for the appropriate sum he would terminate his relationship with her. He added that he was willing to suffer the loss in order to end the relationship. The record does not indicate that Mrs. Williamson has suffered any loss through Mr. Wheelock's representation of her or on account of anything that he had done. No one attributes to Mr. Wheelock any purpose to gain financially through solving his difficulty

in this atypic manner. His honesty has not been questioned. Money that was sent to him for Mrs. Williamson was promptly delivered to her. Since expenses that he incurred in handling this matter have not been paid to him, he has suffered a substantial loss.

The trial committee which gave the evidence careful consideration made this recommendation: "Recommends that the Accused, C. E. Wheelock, be administered a private reprimand." The Board of Governors adopted the findings of the trial committee and advised this court: "Recommend to Supreme Court of the State of Oregon that the Accused, C. E. Wheelock, be administered a private reprimand by the Supreme Court of the State of Oregon."

■■ After undertaking to represent Mrs. Williamson, Mr. Wheelock, according to his words, felt that he "had a bull by the tail," and did not know how to be relieved of the situation. He then adopted the course which we have mentioned—an appalling mistake. In all likelihood, Mr. Wheelock is not the only attorney who has found himself representing a client whom he cannot satisfy and whose constant insistence upon attention to her wants irritates him. But no attorney who finds himself in such a situation should adopt the course that Mr. Wheelock embraced. The recommendation of the Board of Governors in favor of a reprimand is adopted; but we do not favor a private reprimand. Attorneys must be truthful as well as honest. Even when annoyed by a client who is unreasonably persistent the attorney must not resort to falsehoods—not even falsehoods accompanied by a sizeable check such as Mr. Wheelock's. The publication of this opinion is Mr. Wheelock's reprimand.